STATE OF WEST VIRGINIA

*v.*

DENNIS EUGENE MASON

(NO. 13808)

Decided November 28, 1978.

*Stephen Jon Ahlgren* for plaintiff in error.

*Chauncey H. Browning*, Attorney General, *Richard L. Gottlieb*, Assistant Attorney General, for defendant in error.

MCGRAW, JUSTICE:

The defendant was convicted by a jury of voluntary manslaughter in the Circuit Court of Clay County in April of 1975. He prosecutes this writ of error for review contending on several grounds that his confession was improperly admitted into evidence and that the trial court erred in giving State's Instruction No. 25. We find no reversible error in the trial court judgment and affirm the conviction.

## I

The defendant claims that because the police failed to comply with the statutory criminal procedure of this state, primarily the provision which states that an officer "shall take the arrested person without unnecessary delay before a justice of the county in which the arrest was made," W.Va. Code § 62-1-5 [1965],[1] his subsequent written confession was inadmissible at trial.

Although the State contended in the trial court that the defendant was not arrested until after he arrived at the police station and that the defendant consented to a request to accompany the officers to the police station, the State now concedes that the defendant was in fact arrested at his residence when the search warrant was executed at approximately 10:30 p.m. on February 19, 1974. The record supports the State's position as to the timing of the arrest and, despite the fact that the victim's body had not yet been located, we have concluded from an examination of the entire record that the arrest was constitutionally valid.

Marking the beginning of the criminal investigation on January 9, 1974, was the discovery of an artificial leg on the bank of the Elk River in Kanawha County. Later,

---

[1] W.Va. Code § 62-1-5 [1965] states in its entirety:

An officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence, shall take the arrested person without unnecessary delay before a justice of the county in which the arrest is made. When a person arrested without a warrant is brought before a justice, a complaint shall be filed and a warrant issued forthwith. The officer executing the warrant shall make return thereof to the justice before whom the defendant is brought.

This provision was no doubt intended to be operative where, as here, an officer makes an arrest without a warrant for a felony offense not committed in his presence based on probable cause.

Article VIII § 15 of the Judicial Reorganization Amendment of 1974 abolished the office of justice of the peace, effective January 1, 1977, and W.Va. Code § 50-1-17 [1976] requires that all references in the West Virginia Code to "justices of the peace" or to "justice" when meaning "justice of the peace" shall be construed to mean magistrate as created by the provisions of that chapter.

a local manufacturer of prosthetic devices positively identified the artificial limb as belonging to the victim, and through company records the victim's family was located. The police were advised by the family that the victim was missing and had last been seen in downtown Charleston, West Virginia, on January 5, 1974. An article appearing in a Charleston newspaper, containing a photograph of a police officer holding the artificial leg and describing how and where it had been located, led to further evidence strongly implicating the defendant. In response to the article, witnesses informed the police that on the last day the victim had been seen alive they had ridden as passengers in a vehicle traveling from Charleston to Elkview with the victim and the defendant. Also, in January of 1974, a woman who was cohabitating with the defendant contacted the police saying the defendant, upon seeing the newspaper article previously mentioned, had become very upset and had made a statement indicating that he had killed the victim. She also informed law enforcement officials that she believed several articles of the victim's clothing were located in their mutual residence. Thereafter, the police, with her consent, photographed the personal property believed to belong to the victim, and the victim's family later indicated that the photographs portrayed property belonging to the victim.

The evidence clearly indicates the police officers had probable cause to make the arrest at the defendant's residence. The facts and circumstances within the knowledge of the arresting officers were such that a prudent person would have been warranted in believing that a homicide had been committed and that the defendant had committed it.[2]

## II

Having considered the arrest issue, we must consider the post-arrest actions of the police officers regarding the presentment of the defendant to a judicial officer.

---

[2] *See, e.g., State v. Plantz,* 155 W.Va. 24, 180 S.E.2d 614 (1971); *Beck v. Ohio,* 379 U.S. 89, 85 S. Ct. 223, 13 L.Ed.2d 142 (1964).

Following the arrest at the defendant's Davis Creek, Kanawha County residence, the defendant was orally given *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed.2d 694 (1966) warnings. *Miranda* warnings were also administered upon defendant's arrival at the Charleston police station at around 11:30 p.m., and two officers then questioned the defendant until approximately 1:00 a.m. The defendant denied involvement in any crime, agreed to take a polygraph test, and the questioning ceased until the polygraph operator arrived. Whereupon, a *Miranda* rights waiver form was executed by the defendant at approximately 3:25 a.m., and a polygraph test was conducted for approximately one (1) hour. Because the operator concluded that the defendant knew more than he was revealing, the operator advised the officers to confront the accused with some of the probable cause evidence just previously discussed, resulting in an oral confession at 4:35 a.m., some five hours after arriving at the police station and about six hours after his arrest. By agreement, the defendant led the officers to the Clay County crime scene, arriving there at 5:30 a.m. Thereafter, the defendant was taken to the Clay County State Police barracks and orally given his *Miranda* rights. A second waiver form was executed at 8:30 a.m., and a formal confession was taken down by a secretary as the defendant was questioned until approximately 11:00 a.m. Sometime between 11:00 a.m. and 1:00 p.m. on February 20, 1974, the defendant was presented to a Clay County justice of the peace who was then provided the information necessary for the preparation of a murder warrant. After being provided lunch, the defendant signed a sixteen (16) page typed confession at the State Police barracks at approximately 4:30 p.m. that afternoon. These facts establish that the defendant was not taken immediately or otherwise to a justice of the peace in the county where he was arrested. There was, however, no evidence developed in the proceedings below concerning the availability of a justice of the peace on the particular night in question, and thus whether the delay in taking the defendant to a

judicial officer was "unnecessary" is impossible to ascertain.[3]

Given the present record, and the state of the law at the time of the arrest in this case, we decline to reexamine the questions presented by a failure of law enforcement officials to obey the prompt production requirements of W.Va. Code § 62-1-5 [1965]. Nevertheless, in light of extreme significance of our prompt presentment statute to the administration of criminal justice in this state, and in view of the precious constitutional rights[4] implicated when government officials are permitted to hold persons in custody for extended periods of time without the intervention of a neutral and detached judicial officer, one aspect of the meaning of *Code* 62-1-5 [1965] must be definitively established at this juncture.

In *State v. Plantz*, 155 W.Va. 24, 180 S.E.2d 614 (1971) (13 hour delay) and *State v. Slie*, ____ W.Va. ____, 213

---

[3] When the arrest at issue was made, many counties had substantially fewer justices of the peace holding office than the number of offices authorized by law. According to the 1974 West Virginia Blue Book at 608, Clay County, for example, which was then divided into five magisterial districts, had only two justices actually holding office although depending upon population as many as ten were permitted by law. W.Va. Const. art. 8, § 27.

[4] W.Va. Code § 62-1-6 [1965] provides:

The justice shall in plain terms inform the defendant of the nature of the complaint against him, of his right to counsel and, if the offense is to be presented for indictment, of his right to have a preliminary examination. He shall also inform the defendant that he is not required to make a statement and that any statement made by him may be used against him. He shall provide the defendant reasonable means to communicate with an attorney or with at least one relative or other person for the purpose of obtaining counsel or arranging bail. The defendant shall not be committed to jail or removed from the county or arrest until he has had a reasonable opportunity to confer with counsel or to arrange bail or if the offense is unbailable, he shall be committed to jail.

*See also Johnson v. State*, ____ Md. ____, 384 A.2d 709 (1978), enumerating the fundamental guarantees threatened by official inquisitions; *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L. Ed.2d 54 (1975) (The Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.)

S.E.2d 109 (1975) (almost 48 hours), this Court rejected the argument that a violation of the prompt presentment provisions of W.Va. Code § 62-1-5 [1965] vitiates every confession rendered during such period of detention, opting instead for the traditional due process voluntariness test for the admissibility of confessions in conformity with the all but universal rule followed in state courts. *See Annot.*, 19 A.L.R.2d 1331 (1951). Under this approach, delay is treated as one factor in evaluating the voluntariness of a confession.

Although the Court in *Slie* indicated approval of the statutorily imposed requirement of prompt presentment and "suggest[ed] that it be followed in all cases," *Id* at ___, 213 S.E.2d at 115, it failed to state whether the provision was mandatory or merely directory and thus left compliance within the discretion of law enforcement officials. The explicit language of the provision provides a ready answer to this issue; its unambiguous language, "shall take the arrested person without unreasonable delay," imposes a mandatory duty upon law enforcement officials to do just that.

The creation and implementation of the magistrate court system in this state under the aegis of the Judicial Reorganization Amendment of 1974 has provided access to a judicial officer at all hours of the day or night. Persons arrested late at night, as is often the case, should not be subjected to interrogation throughout the night without presentment to a magistrate. Persons must be taken without unreasonable delay to a magistrate in the county where the arrest was made. The judicial system must function at all hours of the day and night, or the statutory safeguards designed to guarantee that criminal defendants be fairly treated from the time of arrest to the time of trial will become eviscerated and meaningless.

### III

The defendant next contends his confession was inadmissible at trial because he was denied his constitutional right to consult with counsel prior to being interro-

gated. It is undisputed that the defendant was given incomplete *Miranda* warnings at his residence and again upon arrival at police headquarters; the officer administering the warnings relied on memory.

However, the defendant does not deny that prior to the giving of his initial verbal confession he was fully advised of his constitutional rights. The record demonstrates that the defendant read and signed a standard waiver of rights form containing a complete statement of his *Miranda* rights prior to the polygraph test and prior to his initial oral confession. Furthermore, it is undisputed that prior to giving a second and more detailed oral confession, later transcribed and signed by the defendant and introduced at trial, the defendant read and signed a second waiver form which fully advised him of constitutional rights. We thus find no error in the admission of the written confession based on a *Miranda* violation.

The defendant further contends his confession was inadmissible because the police continued to interrogate him after he had asserted, individually, and through his girl friend, his right to consult with an attorney. The evidence is in direct conflict on this point with all the police officers involved in the arrest and questioning consistently denying knowledge of requests for an attorney.

The trial court, after hearing first hand the testimony of the witnesses, resolved the credibility issue in favor of the State. That finding is supported by substantial evidence and will not be disturbed as it is not clearly erroneous when viewed in a light most favorable to the State. The defendant voluntarily and intelligently waived his constitutional rights, and the confession is not inadmissible for violations of the requirements of *Miranda*.

The defendant also contends his confession was not voluntarily and knowingly entered and therefore was improperly admitted into evidence by the trial court. We disagree. The principal factor relied on by the defendant

as to this claim is the fact that he had been awake some thirty-six (36) hours at the time he signed the typed confession on February 20, 1974. The State's witnesses, however, testified that the defendant acted and appeared physically and mentally alert when he signed the confession. The testimony indicates the defendant was given food, drink, opportunities to use the bath room, was never physically abused, was never threatened or promised leniency, and was generally treated in a civilized manner. Moreover, the record indicates the defendant had prior experience with the criminal justice system. Although the defense describes the interrogation as lengthy, the fact is that the initial oral confession was given within approximately five (5) hours after arriving at police facilities and interrogation was not continuous during that period of time.

In conclusion, we affirm the trial court ruling that the confession was voluntarily and knowingly made and that the Constitution does not require its exclusion from evidence. The State met its evidentiary burden by at least a preponderance of the evidence, and the jury was allowed, under proper instructions, to give whatever weight and credibility to the confession as they so desired in light of all the facts and circumstances surrounding its utterance. *See, e.g., State v. Starr*, _____ W. Va. _____, 216 S.E.2d 242 (1975).

The defense next argues that the confession was inadmissible because the State failed to prove the corpus delicti independent of the defendant's confession, citing *State v. Blackwell*, 102 W.Va. 421, 135 S.E. 393 (1926). Its first syllabus, stating the general American rule, reads:

> A conviction in a criminal case is not warranted by the extrajudicial confession of the accused, alone. The confession must be corroborated in a material and substantial manner by evidence *aliunde* of the *corpus delicti*. The corroborating evidence, however, need not of itself be conclusive; it is sufficient if when taken in connection with the confession, the crime is established beyond a reasonable doubt.

This contention we do not accept, and we affirm the trial court's ruling. The purpose of the corroboration rule is to reduce the possibility of punishing a person for a crime which was never, in fact, committed. The State's evidence proved the death of a person from drowning, and that this person received head injuries a short time prior to the drowning which were consistent with the type of injuries produced by blows struck with fists. This evidence alone satisfies the rule and, when considered in connection with the confession and all the other evidence in this case, established beyond a reasonable doubt that a crime had been committed. *See generally*, W. LaFave & A. Scott, *Handbook on Criminal Law* 16-17 (1972); 9B M. J., *Homicide* § 87 (1977); 7 J. Wigmore, *Wigmore on Evidence* § 2071 (3rd ed. 1940).

The fact that the defendant's voluntary confession may have led to some of the corroborative evidence is of no consequence; the State may use evidence discovered as a result of a voluntary confession to establish the corpus delecti and to corroborate the confession.

IV

Finally, the defendant assigns as error the giving of State's Instruction No. 25 on the ground that there was no evidence to support it. That instruction reads:

> The court instructs the jury that a person is presumed to intend that which he does or which is the immediate or necessary consequence of his act; and if the jury believes from all the evidence in this case beyond a reasonable doubt that the defendant, without any or upon very slight provocation, struck the deceased with his fist and feet thereby giving him a mortal wound from which he died, he, the said Dennis Mason, is *prima facie* guilty of an unlawful and malicious killing and the necessity rests upon him of showing extenuating circumstances or the circumstances appear from the case made by the State, he is guilty of murder in the *second degree*. (emphasis supplied).

The defense argues there was no evidence that the victim suffered or died from a mortal wound. The defendant, in his written confession, stated that he severely beat the deceased until he was unable to move and then rolled him into the river, but at trial he testified that he left the victim alive on the bank of the Elk River. The State's pathologist testified that the cause of death was drowning and that the deceased suffered a superficial head wound prior to the drowning.

Neither party cites cases on point defining a "mortal wound," but we think it clear that the victim did not suffer a mortal wound in any common sense meaning of those words. Accordingly, we conclude the instruction was unsupported by the evidence and erroneous.

We also conclude, however, that giving the instruction was harmless error and does not constitute cause for reversal. Although it is established in this jurisdiction that the giving of an erroneous instruction raises a presumption of prejudice, it is an equally well established rule that this Court will not reverse a criminal conviction because of an erroneous instruction where it clearly appears from the entire record that no prejudice has resulted. *See, e.g.*, syl. pt. 8, *State v. Bail*, 140 W.Va. 680, 88 S.E.2d 634 (1955); syl. pt. 4, *State v. McCoy*, 63 W.Va. 69, 59 S.E. 758 (1907); 5 Am. Jur.2d *Appeal and Error* § 816 (1962). The instruction complained of basically told the jury that if they found the defendant without adequate provocation inflicted a mortal wound on the deceased then they should find, absent some extenuating circumstances, the defendant guilty of second degree murder. The jury's verdict, however, was voluntary manslaughter not second degree murder. Under these circumstances, it seems beyond dispute that the jury found the evidence did not fit the instruction and that the jury was in no way misled by the instruction. Their verdict required a finding of adequate provocation. Additionally, there was no evidence that the defendant inflicted a mortal wound on the victim. The error, if any, in giving this instruction, therefore, was harmless and resulted in no prejudice to the accused. In addition, the

defendant had the benefit of an instruction which directed the jury to find him not guilty if the victim got into the river by his own initiative, by his own intoxication, or if the evidence left them with a reasonable doubt.

The further question is whether this instruction impermissibly shifted the burden of proof from the State to the defendant and, therefore, the conviction should be reversed under *State v. Pendry*, ___ W.Va. ___, 227 S.E.2d 210 (1976), and its counterpart *Jones v. Warden*, ___ W.Va. ___, 241 S.E.2d 914 (1978), which decisions were necessitated by *Mullaney v. Wilbur*, 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed.2d 508 (1975).

In the *Jones* opinion, the other members of the Court were equally divided on the question of whether the harmless error doctrine could ever be applied to insulate criminal convictions from attack where an instruction was given which impermissibly shifted the burden of persuasion to the defendant. This question is of considerable importance to the administration of the criminal justice system in this state and the integrity of appellate review. We conclude that the harmless error standard of review is constitutionally permissible where *Mullaney*-type burden-shifting and instructions have been given, and the verdict results in a conviction of less than murder. An automatic reversal standard of review is inappropriate where a court can confidently declare beyond a reasonable doubt that such instruction in no way contributed to the conviction or affected the outcome of the trial. This case, which resulted in a conviction of voluntary manslaughter clearly falls in that category. There is precedential support for this conclusion.[5]

---

[5] *Hunter v. Williams*, 570 F.2d 510 (4th Cir. 1978); *Wilkins v. Maryland*, 402 F. Supp. 76 (D.C. Md.) *aff'd per curiam*, 538 F.2d 327 (4th Cir. 1976), *cert. denied*, 429 U.S. 1044, 97 S. Ct. 747, 50 L. Ed.2d 757 (1977); *United States v. Chiantese*, 560 F.2d 1244 (5th Cir. 1977); The leading state court decision is *Evans v. State*, 28 Md. App. 640, 349 A.2d 300 (1975); its principles were applied to affirm first degree murder convictions in *Dorsey v. State*, 29 Md. App. 97 349 A.2d 414 (Ct. Spec. App. 1975) and *Brown v. State*, 29 Md. App. 1, 349 A.2d 359 (Ct. Spec. App. 1975); *accord, State v. Kroll*, 87 Wash.2d 829, 558 P.2d 173 (1976) (En Banc.); *State v. Dault*, 19 Wash. App. 709, 578

Finally, the expert testimony was that the deceased died of drowning thus indicating the victim did not die from a mortal wound inflicted by the accused. On this record, it can be said beyond a reasonable doubt that the jury found the instruction inapplicable to the case, since neither of its preconditions—absence of adequate provocation and a mortal wound— were present in the case. The instruction was not relied on and was not prejudicial. This Court cannot assume that juries do not understand or follow the clear import of the language embraced in an instruction. It is the duty of the jury to follow the court's instructions, *Iacuone v. Pietranton*, 138 W.Va. 776, 77 S.E.2d 884 (1953), and here they did.

The defendant got more than he was entitled to and cannot be heard to complain. The excision of the instruction beyond a reasonable doubt would not have affected the jury verdict and therefore was harmless beyond a reasonable doubt.

*Affirmed.*

P.2d 43 (Ct. App 1978); to affirm a manslaughter conviction in *Wright v. State*, 29 Md. App. 57, 349 A.2d 391 (Ct. Spec. App. 1975); and to affirm various verdicts in *Blake v. State*, 29 Md. 124, 349 A.2d 429 (Ct. Spec. App. 1975); *Newborn v. State*, 29 Md. App. 85, 349 A.2d 407 (Ct. Spec. App. 1975); *Burko v. State*, 28 Md. App. 732, 349 A.2d 355 (Ct. Spec. App. 1975); *accord, State v. Moore*, 237 Ga. 269, 227 S.E.2d 241 (1976); *Trotti v. State*, 144 Ga. App. 648, 242 S.E.2d 270 (1978); *See also Pinkus v. United States*, ____ U.S. ____, 98 S. Ct. 1808, ____ L.Ed.2d ____ (1978) *citing Hamling v. United States*, 418 U.S. 87, 94 S. Ct. 2887, 41 L. Ed.2d 590 (1974).