307 S.E.2d 655

**STATE of West Virginia**

v.

**Dexter MAYS.**

**No. 15716.**

Supreme Court of Appeals of West Virginia.

July 8, 1983.

Rehearing Denied Oct. 20, 1983.

Silas B. Taylor, Asst. Atty. Gen., Charleston, for appellee.

Don C. Kingery and David Nibert, Point Pleasant, for appellant.

NEELY, Justice:

On 15 October 1980, police were led to the body of John Wamsley on the Old Moore farm in Mason County. There were three bullet wounds in Wamsley's skull and one between the shoulder blades. The police investigation of this crime led them first to Ross Johnson and eventually to Dexter Mays, the appellant in this case. From these sources, the police were able to piece together the sordid events that led to the demise of John Wamsley.

The story that the police heard can be described only as bizarre. This was a case of murder for hire. In September of 1980, John Wamsley approached his friend, Dexter Mays, and asked him if he knew of anyone who could do him a favor. When Mays asked the nature of the favor he was told that Wamsley wanted someone "to shoot somebody." Mays agreed to do Wamsley this "favor" for the sum of $300.00.

On the evening of 14 October 1980, Wamsley, Mays and a third individual, a blonde-haired man, drove from Huntington to Gallipolis. On the way back, they stopped in Mason County and Mays learned that the man whom Wamsley had targeted for death was Wamsley himself. Mays claims that he was unwilling to shoot his friend and acquiesced only because he feared for his own life. With Wamsley kneeling on the ground, Mays pulled the trigger and fired three bullets into his willing victim.

Wamsley was a homosexual and a drug dealer. His religious beliefs created within him a strong feeling of self-disdain. He was also deeply in debt and had taken out a life insurance policy which would not pay the death benefit if Wamsley committed

suicide. Therefore, he had arranged his own death and had sought Mays' assistance in carrying out his ghoulish plan.

The essential facts of this grim case are not in dispute on appeal. Instead, this Court must decide several narrow procedural questions. The most important of these is whether the admissions of the appellant, Dexter Mays, and the physical evidence that was obtained pursuant to those admissions should have been excluded from evidence at the trial, despite the admittedly voluntary nature of Mays' statements. This appeal focuses primarily on whether Mays was presented to a magistrate in a sufficiently timely fashion. We find that he was not and therefore, we reverse.

## I

On 3 November 1980, police investigating the death of John Wamsley found Dexter Mays, who had been identified as a potential suspect by Ross Johnson, at the home of another man whom they were interviewing in connection with Wamsley's death. The police dispatched one officer to obtain a warrant for the arrest of Mays while two other officers waited outside the house to make sure that Mays did not escape.

Mays left the house at 11:40 p.m. Because the officers were aware that Mays had seen their squad car and feared that he would flee across the border into Ohio, one of them approached Mays and took him into custody. While Mays was not formally arrested, he was told that the officers had questions for him regarding Wamsley's death and was given proper *Miranda* warnings. Mays stated that he understood his rights and was willing to discuss the matter. He was taken to the Huntington police detachment where interrogation continued until 1:00 a.m.

By 1:00 a.m. the police had obtained a warrant for Mays, but they found his denial credible and believed that probable cause for arrest was "slipping away." Therefore, they continued their interrogation without serving the warrant until about 2:20 a.m., at which point Mays requested a polygraph test.

The polygraph examiner arrived at approximately 3:50 a.m., again gave *Miranda* warnings and had the defendant sign a proper waiver form. At 4:40 a.m., before any polygraph test was administered, Mays confessed to killing Wamsley. A stenographer was summoned and arrived at about 6:00 a.m. Mays signed a transcript of an interview with police officers confessing to the crime at approximately 7:00 a.m.

At 9:00 a.m., more than nine hours after Mays was originally seized, he was presented to a magistrate and the warrant was served upon him. While being taken to a magistrate in Mason County, he directed police to various pieces of physical evidence—the keys to Wamsley's van, the gloves worn while firing the gun, a leather jacket purchased with the blood money and the location where Wamsley's personal "testimonial book" was burned—which were later used at the trial.

## II

This case does not involve a coerced confession obtained by the police in violation of the Fifth Amendment. No one disputes the fact that Mays was given proper *Miranda* warnings. This does not, however, end our inquiry. In *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), the Supreme Court held that a confession obtained pursuant to an illegal arrest violated the Fourth Amendment irrespective of *Miranda* warnings. In deciding whether a confession obtained after an improper seizure should be excluded from trial, courts were to consider the totality of circumstances surrounding the arrest.

West Virginia adopted a similar approach to confessions resulting from illegal arrest in *State v. Stanley*, 168 W.Va. 294, 284 S.E.2d 367 (1981). In that case, we held that a confession obtained by exploitation of an illegal arrest was inadmissible despite *Miranda* warnings. In determining whether the causal link between the arrest and confession warranted exclusion, courts were to consider the temporal proximity of the arrest to the confession, the

presence of intervening circumstances and the flagrancy of police misconduct.

■ While this precedent is instructive, it does not control the case *sub judice.* Here, the police seized Mays because they were properly concerned that he might flee. This constituted an exigent circumstance. In *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), the Supreme Court held that it was reasonable to detain a man while a search warrant for his house was being obtained. This "limited intrusion on the personal security" of a suspect was justified by "substantial law enforcement interests" in assuring that suspects not escape. *Id.* at 699, 101 S.Ct. at 2592.

■ More recently, the Supreme Court has noted: "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen . . . ." *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). Thus the police were acting reasonably and legally in initially confronting Mays. Furthermore, the ability of the police to obtain a warrant for Mays' arrest, despite the fact that it was not executed, indicates that an impartial judicial officer did believe that probable cause existed at the time of the initial seizure.

■ We have no quarrel with the police conduct up to the time Mays was taken to police headquarters. At that point, "what had begun as a consensual inquiry in a public place had escalated into an investigatory procedure in a police interrogation room . . . ." *Florida v. Royer* at 1327. Mays had not been told that he was free to

leave if he so chose. He was under *de facto* arrest.

■ Under *W.Va.Code,* 62-1-5 [1965],[1] an individual under arrest must be presented to a magistrate without unnecessary delay. In *State v. Mason,* 162 W.Va. 297, 249 S.E.2d 793 (1978), we held that statute to be mandatory. In *State v. Persinger,* 169 W.Va. 121, 286 S.E.2d 261 (1982), we ruled that delay in taking a defendant to a magistrate may be a critical factor in determining the admissibility of a confession when it appears that the primary purpose of the delay was to obtain a confession. See also, *State v. Mitter,* 169 W.Va. 652, 289 S.E.2d 457 (1982). In the case *sub judice,* the State argues both that her officers believed probable cause for arrest was "slipping away" and that the purpose in continuing to question Mays was to allow him to prove his innocence rather than to establish his guilt.

We do not question the *bona fides* of the police in this case. It is, however, difficult for an appellate court to make principled decisions based on distinctions between when the subjective purpose of interrogation is establishing guilt or allowing a suspect to prove innocence. By establishing a clear rule that police investigatory interrogations without presentment to a magistrate are allowable only when the suspect is expressly informed that he is not under arrest, is not obligated to answer any questions and is free to go, we hope to establish a system sufficiently flexible that the innocent are allowed to prove their blamelessness and the police are able effectively and legally to interrogate those who are ultimately proven guilty.

■ We continue to embrace the rule of *State v. Stanley, supra,* that confessions obtained through the exploitation of illegal arrests are inadmissible. We also reaffirm the mandatory nature of *W.Va.Code,* 62–

---

1. *W.Va.Code,* 62–1–5 states in its entirety:

An officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence, shall take the arrested person without unnecessary delay before a justice of the county in which the arrest is made. When a person arrested without a warrant is brought before a justice, a complaint shall be

filed and a warrant issued forthwith. The officer executing the warrant shall make return thereof to the justice before whom the defendant is brought.

In *State v. Mason, supra,* 162 W.Va. at 298, 249 S.E.2d at 795, n. 1, we noted that this mandate also extended to arrests made without a warrant or for felonies not committed in the officer's presence.

1–5 [1965] requiring presentment to a magistrate within a reasonable time after arrest. *See, State v. Mason, supra.* In this case, we extend the force of those rulings to cases in which a formal arrest is not made, but the suspect is effectively deprived of his liberty. Therefore, this case must be reversed because of the unreasonable delay between the appellant's seizure (which had all the elements of a lawful arrest, including the possession of a valid warrant) and his presentment before a magistrate. The confession given by the appellant and any poisonous fruits of that confession should have been suppressed since the confession itself was a direct result of prolonged, illegal custodial interrogation.

### III

Appellant presents two other assignments of error which can be dealt with summarily. First, he argues that a jury instruction that a verdict of murder in the first or second degree could be returned was improper. Appellant advances the curious argument that there was no evidence of malice. He argues that his actions were motivated either by a fear for his own life or simple heat of passion.

That is appellant's theory of the case. The State, however, presented uncontradicted evidence that Mays accepted payment for his deeds. That evidence would seem clearly to support a finding of malice and it is the place of the jury and not the court to decide which of those conflicting theories should prevail. An instruction to the jury is proper if it correctly states the law and there has been sufficient evidence offered at trial to support it. *State v. Hall*, 171 W.Va. 212, 298 S.E.2d 246 (1982) (syl. pt. 6). The judge was quite correct in instructing the jury on first and second degree murder.

Finally, appellant asserts that the trial judge abused his discretion in failing to grant a motion for continuance so that the defendant could attempt to find a material witness, the blonde-haired man who was allegedly present at the time of the killing. The original trial date was set for 7 April 1981. Counsel for Mays requested and received three continuances until 20 July 1981. At that time, counsel for Mays stated they were ready for trial.

Since appellant was unable to supply a name or anything but an impressionistic description of the alleged witness after having approximately seven months to prepare for trial, it was hardly an abuse of discretion for the trial judge to determine that the case must go forward. It is well settled law in West Virginia that a trial judge need not grant a continuance due to the absence of a material witness when there is no evidence that the witness is within the jurisdiction or can be procured at any future time. *Woodruff v. Gilliam*, 116 W.Va. 101, 115, 179 S.E. 873 (1935). Clearly then, the alleged existence of a mystery witness who may or may not have anything relevant to say cannot be allowed to stand in the way of an important criminal trial *ad infinitum.*

Accordingly, for the reasons given above, the judgment of the Circuit Court of Mason County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.