474 S.E.2d 545

**STATE of West Virginia, Plaintiff
Below, Appellee,**

v.

**TODD ANDREW H., Defendant
Below, Appellant.**

No. 23186.

Supreme Court of Appeals of
West Virginia.

Submitted May 28, 1996.

Decided June 14, 1996.

Joy M. Cavallo, Assistant Attorney General, Charleston, for Appellee.

Deborah A. Lawson, Public Defender, Martinsburg, for Appellant.

CLECKLEY, Justice:

This is an appeal by the defendant below and appellant herein, Todd Andrew H.,[1] from a delinquency adjudication in the Circuit Court of Jefferson County.[2] The defendant was adjudged a juvenile delinquent by the juvenile court, sitting without a jury, for violating W. Va.Code, 49–1–4(1) (1978).[3] On appeal, we are asked to determine whether the juvenile court committed error in denying the defendant's motion to suppress evidence seized from his person. For reasons stated below, we reverse the order of the circuit court and remand this matter for further proceedings consistent with this opinion.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 23, 1995, at approximately 8:00 p.m., Officer Ward Sigler, Jr., of the Charles Town Police Department, was driving along Southwest Street looking for individuals against whom municipal court capias warrants had been issued. Officer Sigler noticed the defendant standing on the sidewalk of Southwest Street near Doc's Tavern. There was no capias warrant outstanding for the defendant. Officer Sigler recognized the defendant as someone to whom he had given a traffic citation in January of 1995 and who failed to appear in municipal court on the matter. Officer Sigler also vaguely recalled,

---

1. We follow our traditional rule of not identifying the last name of a juvenile. *See State v. Ellsworth J.R.,* 175 W.Va. 64, 66 n. 1, 331 S.E.2d 503, 505 n. 1 (1985).

2. The defendant was seventeen years old at the time of his arrest in this matter.

3. W.Va.Code, 49–1–4(1), provides: " 'Delinquent child' means a child: (1) Who commits an act which would be a crime under state law or a municipal ordinance if committed by an adult, punishable by confinement in a jail or imprisonment[.]"

upon seeing the defendant, that a juvenile petition may have been previously filed against the defendant. With this knowledge in mind, Officer Sigler pulled over in his patrol car to where the defendant stood. Officer Sigler informed the defendant that he had to come with him to police headquarters to discuss his failure to appear in municipal court on the citation issued to him in January. The defendant complied with Officer Sigler and got into the patrol car.

Upon their arrival at police headquarters, Officer Sigler had an NCIC search run on the defendant. Officer Sigler testified the NCIC search listed the defendant as a runaway. The defendant informed Officer Sigler that he had in fact returned home and was no longer a runaway. Officer Sigler informed the defendant that he was under arrest. A pat-down search of the defendant's person next ensued. During this search, Officer Sigler testified he felt an unusual "lump" near the groin area of the defendant. Officer Sigler then instructed the defendant to go to a more secluded room and thereafter told the defendant to lower his pants. When the defendant complied, Officer Sigler observed a small "baggy" containing a large white chunky substance attached to the defendant's groin area. Officer Sigler retrieved the white substance and identified it as crack cocaine.[4]

A petition was filed against the defendant charging him with delinquency in possessing, with intent to deliver, a Schedule II controlled substance in violation of W. Va.Code, 60A–4–401(a) (1983). An adjudication proceeding was held, without a jury, on April 10, 1995. Counsel for the defendant moved to suppress the crack cocaine evidence on the ground that it was seized pursuant to an unlawful search. The motion to suppress was denied. The defendant was subsequently adjudged delinquent[5] and was committed to the Industrial Home for Youth at Salem for a period of four months to two years, with after care. On appeal, the defendant argues the crack cocaine evidence should have been suppressed as the product of an unlawful search and seizure.

## II.

## DISCUSSION

The sole issue before this Court is whether the crack cocaine evidence should have been suppressed as the product of an unreasonable search and seizure under Section 6 of Article III of the West Virginia Constitution.[6] This Court reviews a circuit court's factual findings on a motion to suppress for clear error. *State v. Lacy*, 196 W.Va. 104, 109, 468 S.E.2d 719, 724 (1996); *State v. Farley*, 192 W.Va. 247, 253, 452 S.E.2d 50, 56 (1994); *State v. Stuart*, 192 W.Va. 428, 433, 452 S.E.2d 886, 891 (1994). We review *de novo* the ultimate determination of reasonableness under Section 6 of Article III. *Lacy*, 196 W.Va. at 109, 468 S.E.2d at 724. Additionally, in reviewing a motion to suppress on appeal, facts are construed in the light most favorable to the prevailing party below—in this case, the State. *Lacy*, 196 W.Va. at 109, 468 S.E.2d at 724. Where a circuit court has not made the necessary findings, the matter may be remanded with appropriate directions or "the circuit court's denial of a motion to suppress [may be] upheld if there is any reasonable

---

4. Lab testing confirmed the white substance to be crack cocaine, which had a weight of 29.5 grams.

5. The State called two witnesses during the adjudication hearing. The defendant did not put on a case.

6. The State confessed error in this case and concedes the judgment of delinquency should be reversed and a new adjudication proceeding be ordered. We held in the single Syllabus of *State v. Goff*, 159 W.Va. 348, 221 S.E.2d 891 (1976):

> "In a criminal case where the state confesses error, urges that the judgment be reversed and that the defendant be granted a new trial, this

Court, upon ascertaining that the errors confessed are reversible and do in fact constitute cause for the reversal of the judgment of conviction, will reverse the judgment and grant the defendant a new trial."

Mere confession of error by the State, of course, does not dictate the hand of this Court nor the outcome of this case. We stressed in Syllabus Point 8 of *State v. Julius*, 185 W.Va. 422, 408 S.E.2d 1 (1991): "This Court is not obligated to accept the State's confession of error in a criminal case. We will do so when, after a proper analysis, we believe error occurred." *Julius* guides the ultimate disposition of this case.

view of the evidence to support it." *Lacy*, 196 W.Va. at 110, 468 S.E.2d at 725, *citing Farley, supra.* In ruling that the crack cocaine evidence was admissible, the circuit court stated that the fact that Officer Sigler was aware that a juvenile petition had been filed against the defendant and that the defendant had an unpaid traffic citation formed probable cause to arrest the defendant; therefore, the search and seizure of the contraband was justified as incident to a lawful arrest. In formulating its ruling, the circuit court gave no consideration to the limiting standards set out in W.Va. Code, 49–5–8(b)(3) (1994). Because we find the provisions of this statute were violated, we reverse the order of the circuit court and remand this matter.

■ Our analysis begins with a few fundamental observations. There are, of course, three basic types of encounters between police officers and individuals. Each of the three types of encounters has a distinct ramification or legally cognizant consequence under Section 6 of Article III of our Constitution and the Fourth Amendment to the United States Constitution.[7] The first is a consensual encounter in which an individual agrees to speak to police officers. Such contact may be initiated by the police without any objective level of suspicion and does not, without more, amount to a "seizure" implicating Section 6 of Article III. *See* Syl. pt. 1, *State v. Mays*, 172 W.Va. 486, 307 S.E.2d 655 (1983) ("[i]t is not an unreasonable seizure for police to approach an individual in a public place, ask him if he is willing to answer questions and put questions to him if he is willing to listen"); *United States v. Cooper*, 43 F.3d 140, 145 (5th Cir.1995) (" 'even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual's identification . . .; and request consent to

search his or her luggage . . . as long as the police do not convey a message that compliance with their request is required' "), *quoting Florida v. Bostick*, 501 U.S. 429, 435, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389, 398–99 (1991).

■ The second type of encounter, based on principles enunciated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), involves a limited investigative stop. *See United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605, 613 (1985); *United States v. Place*, 462 U.S. 696, 702, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110, 117–18 (1983); *Duvernoy*, 156 W.Va. at 585, 195 S.E.2d at 636. Prior to *Terry* and its progeny, any restraint on the person amounting to a seizure for purposes of the Fourth Amendment was invalid unless justified by probable cause. *Terry* created a limited exception to this general rule: Certain seizures are justifiable under the Fourth Amendment if there is articulable suspicion that a person has committed or is about to commit a crime. In *Terry*, the Supreme Court also held that a limited frisk of the suspect's outer clothing to discover weapons was justified in light of the officer's "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.' " *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989), *quoting Terry*, 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911. *See State v. Choat*, 178 W.Va. 607, 611, 363 S.E.2d 493, 497 (1987) (the police may cause a brief investigative stop of a person "whenever the police officer has a reasonable suspicion . . . that the person he stopped has been or is about to be involved in a crime").

■ The third type of police-citizen encounter is an arrest—plainly an Section 6, Article III "seizure" that must be based on probable cause.[8] In determining whether a

---

7. Section of Article III is our "search and seizure" guarantee. It provides:

   "The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized."

The language of this section is not meaningfully distinct from the Fourth Amendment; therefore, we traditionally construe the section in harmony with the Fourth Amendment. *State v. Duvernoy*, 156 W.Va. 578, 582, 195 S.E.2d 631, 634 (1973).

8. We have interpreted Section 6 of Article III as requiring that a warrantless arrest be based upon probable cause. Syl. pt. 6, *Duvernoy, supra.* In Syllabus Point 2 of *State v. McCarty*, 184 W.Va.

"seizure" under Section 6 of Article III has occurred we must consider " 'if, in view of all the circumstances surrounding the [encounter], a reasonable person would have believed that he was not free to leave.' " *Michigan v. Chesternut,* 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565, 572 (1988), *quoting United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980). *See State v. Jones,* 193 W.Va. 378, 386, 456 S.E.2d 459, 467 (1995) ("[a]t the point where a reasonable person believes he is being detained and is not free to leave, then a [seizure] has occurred and Section 6 of Article III is triggered"). The reasonable person test, of course, is an objective test.

## A.

### Street Encounter

The record indicates that at the time Officer Sigler approached the defendant in his cruiser on the evening of March 23, 1995, the defendant merely was standing on a street corner. There was no evidence that Officer Sigler had any suspicion that the defendant had engaged in or was about to engage in criminal activity. During the adjudication proceeding, Officer Sigler testified on direct examination as follows regarding his initial contact with the defendant:

"Q. Would you please describe your contact with him?

"A. I was in my cruiser driving down Southwest Street when I noticed the said juvenile in front of Doc's Tavern on Southwest Street. I recognized him from previous contact with him. I also remembered seeing a bulletin on our board by our schedule in the office some sort of wanted list for this subject.

"So I turned the cruiser around and had called the subject over to my vehicle and told him about the apparent, I believe it was a petition I think his mother had filed,

and then also he had some unpaid citations. He failed to appear in court. I had written him a ticket on 1/4 of 1995 and he failed to appear. So I told him he needed to go down to the office to discuss it. So he got in the cruiser and went to the office."

The defendant argues in this appeal that he was effectively and unlawfully placed under arrest when Officer Sigler ordered him to get into the cruiser because he was never free to leave. The defendant points out that Officer Sigler did not have a capias or arrest warrant against him and that Officer Sigler did not have probable cause to believe the defendant had committed or was about to commit a felony or that he was committing a misdemeanor. Additionally, the defendant notes that the alleged juvenile petition against him had been withdrawn by his mother about a week prior to this encounter and no order had been issued by a circuit court for his apprehension based upon the withdrawn petition. The defendant's argument runs roughshod over the legal issues at stake in the street encounter. Two issues derive from the street encounter: (1) defendant's entry into the cruiser, and (2) transportation of the defendant to police headquarters.

■ The circuit court found that because Officer Sigler had knowledge that a petition had been filed against the defendant and the defendant had not paid a traffic citation, Officer Sigler had probable cause to arrest the defendant. Therefore, from the circuit court's perspective, the defendant's entry into the cruiser was a valid seizure. Obviously, the circuit court's legal conclusion was erroneous. The outstanding traffic citation was given for operating a motor vehicle with a broken tail light in violation of W. Va.Code, 17C–15–5(a) (1951). This citation offense is a misdemeanor under W. Va.Code, 17C–15–1(a) (1951). Once the defendant failed to

---

524, 401 S.E.2d 457 (1990), we stated: " 'The right to arrest in public without a warrant, based on probable cause that the person has or is about to commit a felony, is the general if not universal rule in this country.' Syllabus Point 4, *State v. Howerton,* [174] W.Va. [801], 329 S.E.2d 874 (1985)." We further held in Syllabus Point 1 of *Cunningham v. Bechtold,* 186 W.Va. 474, 413 S.E.2d 129 (1991):

" 'Probable cause to make a misdemeanor arrest without a warrant exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to warrant a prudent man in believing that a misdemeanor is being committed in his presence.' Syllabus, *Simon v. West Virginia Dep't of Motor Vehicles,* 181 W.Va. 267, 382 S.E.2d 320 (1989)."

appear pursuant to the citation, the municipal court had authority to issue a capias or warrant. *See* W.Va.R.Crim.P. 4(a). Absent judicial authority to arrest for failure to appear, Officer Sigler lacked the requisite power to bring in the defendant on his own. Moreover, once the defendant was taken to the police station, he was never processed for the traffic citation. Thus, any claim that the seizure of the defendant was justified on the grounds of "failure to appear" is at best pretextual.[9] With respect to Officer Sigler's knowledge of a petition filed against the defendant (*see* Section II(B), *infra*), the evidence is clear that Officer Sigler did not know the exact nature of the petition. Thus, we have no hesitation in finding the circuit court was clearly wrong in finding Officer Sigler had probable cause to arrest the defendant and place him in the cruiser.

■■■■■ Officer Sigler testified he told the defendant he wanted to discuss the traffic citation with him at police headquarters, so the defendant got into the cruiser. Mere entry into a police car, without more, does not constitute an arrest. *State v. George*, 185 W.Va. 539, 545, 408 S.E.2d 291, 297 (1991). *See United States v. Parr*, 843 F.2d 1228, 1230 (9th Cir.1988) ("[c]ertainly, there is no per se rule that detention in a patrol car constitutes an arrest"); *United States v. Manbeck*, 744 F.2d 360, 377 (4th Cir.1984) ("[t]his court refuses to recognize a rule that all detentions in a patrol car are *per se* arrests"), *cert. denied*, 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985). (Emphasis in original). However, this Court is inflexibly committed to the principle that "when police take a [citizen] to the stationhouse for interrogation, they *must* either have probable cause or the consent of the suspect." *Jones*, 193 W.Va. at 385, 456 S.E.2d at 466. (Emphasis added). *See Dunaway v. New York*, 442 U.S. 200, 216, 99 S.Ct. 2248, 2258, 60 L.Ed.2d 824, 838 (1979)

(arrest occurs when suspect is taken to police headquarters for interrogation).

■■■■■ Transporting a citizen, involuntarily, miles to a police station for purposes of interrogation is the functional equivalent of an arrest requiring probable cause. We have already concluded that Officer Sigler did not have probable cause to arrest the defendant at the point of their encounter on the street. Therefore, in order for Officer Sigler to transport the defendant to police headquarters, the defendant had to expressly consent to this conveyance. Unfortunately, there was not an independent suppression hearing in this case. The circuit court made its ruling on the defendant's suppression motion after hearing the trial testimony of Officer Sigler. Neither the State nor the defendant questioned Officer Sigler as to whether the defendant expressly consented to being transported to police headquarters. The record in this case merely informs us that the defendant got into Officer Sigler's cruiser. While we are obligated to construe the facts of a motion to suppress in the light most favorable to the prevailing party below—the State, on the narrow issue we are reviewing, the State failed to meet its burden of production. Moreover, as we point out in Section II(B), *infra*, there is an additional constitutional error that makes reversal necessary.

### B.

### *Encounter At Police Headquarters*

■■■ Once Officer Sigler arrived at police headquarters, it was incumbent upon him to inform the defendant that he was not under arrest, that he was free to leave, and that he did not have to answer questions. Syl. pt. 2 *Mays, supra. See Farley*, 192 W.Va. at 254–55 n. 10, 452 S.E.2d at 57–58 n. 10 ("[t]elling a suspect that he/she is not under arrest and is free to leave usually is sufficient to prevent a finding of custody and will circumvent a

---

**9.** We are cognizant of the recent decision in *Whren v. United States*, —— U.S. ——, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), where the United States Supreme Court unanimously held that the subjective intent or motive of the police is immaterial in determining the legality of an arrest. All the police need for a search incident to a lawful arrest is probable cause: "The Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent." Thus, in addition to pretext, we expressly find in the case *sub judice* that the police conduct at this juncture was not "reasonable" within the contemplation of Section 6, Article 3 of the West Virginia Constitution.

finding of de facto arrest"), *citing State v. Wyant,* 174 W.Va. 567, 328 S.E.2d 174 (1985); *State v. Stanley,* 168 W.Va. 294, 284 S.E.2d 367 (1981). The record shows that Officer Sigler did not give the advice that we held was crucial in both *Mays* and *Jones.* Guided by these decisions, however, the facts of this case are unique and do not conclusively lead to a finding that a de facto arrest occurred because Officer Sigler failed to comply with the pronouncements of *Mays* and *Jones.* The central conduct complained of here, the search of the defendant's person, did not rise from direct interrogation of the defendant. The search resulted from information learned about the defendant through NCIC as a result of his presence at police headquarters.

█ In determining whether an unlawful de facto arrest resulted from encounter in this case, we hold that, when police have a citizen at police headquarters, without probable cause and he or she has not expressly consented to being there and the police have failed to inform him or her that he or she is not under arrest and that he or she is free to go and does not have to answer any questions, then an unlawful seizure has occurred. *See Mays,* 172 W.Va. at 489–90, 307 S.E.2d at 658; *Jones,* 193 W.Va. at 385–86, 456 S.E.2d at 466–67; *State v. Jameson,* 194 W.Va. 561, 565, 461 S.E.2d 67, 71 (1995) *(per curiam ).*

█ Determining that the defendant was the victim of a seizure amounting to an arrest does not end the matter. This case ultimately turns on the application of W. Va.Code, 49–5–8(b)(3). Pursuant to W. Va. Code, 49–5–8(b)(3), a juvenile may be taken into "custody" without a warrant or court order if the law enforcement "official has reasonable grounds to believe that the child is a runaway without just cause from the child's parents . . . and the health, safety and welfare of the child is endangered[.]" Although we have not had occasion to apply this provision, we did hold in *Ellsworth J.R.,*

175 W.Va. at 70, 331 S.E.2d at 509, that within the context of W. Va.Code, 49–5–8(b), "the term 'custody' is equivalent to an arrest[.]" Therefore, W. Va.Code, 49–5–8(b)(3), permits a juvenile to be arrested based upon "reasonable" grounds that he is a runaway and his health, safety, and welfare are endangered. We will examine separately the "reasonable ground" and "endangered" elements of the provision.

In determining whether Officer Sigler had reasonable grounds to believe the defendant was a runaway, the evidence was as follows: During cross-examination, Officer Sigler testified that about a week before the arrest of the defendant, he saw a "checklist" which indicated a petition had been filed against the defendant. Officer Sigler testified that when he saw the defendant in front of Doc's Tavern he did not radio headquarters to determine whether the petition was still outstanding on the defendant.[10] There was no evidence to indicate that Officer Sigler recalled what the substance of the petition was, i.e., what conduct by the defendant caused the petition to be filed. Under these circumstances, it does not appear that Officer Sigler had reasonable grounds to believe the defendant was a runaway at the time he ordered the defendant to get into his cruiser. At most, Officer Sigler had reasonable grounds to believe that some type of petition had been filed against the defendant.

█ Once Officer Sigler arrived at police headquarters with the defendant, he ran a check on him through NCIC. Officer Sigler testified the check revealed a runaway petition had been filed against the defendant. The defendant informed Officer Sigler that he had been home and was no longer a runaway. Officer Sigler did not believe the defendant and informed him that he was under arrest. We believe that Officer Sigler had reasonable grounds to believe the defendant was a runaway based upon the information he obtained through NCIC.[11]

---

10. In his subsequent written report of the arrest, Officer Sigler, in fact, "falsely" indicated he radioed headquarters to have a "check" run on the defendant.

11. The exclusionary rule does not apply to "evidence seized in violation of the Fourth Amendment by an officer who acted in reliance on a police record indicating the existence of an outstanding arrest warrant—a record that is later determined to be erroneous," if the source of the

■ Although the data from NCIC furnished Officer Sigler with reasonable grounds to believe that the defendant was a runaway for arrest purposes, W. Va.Code, 49–5–8(b)(3), also requires the juvenile's health, safety, and welfare be endangered. The Legislature made clear in its enactment of this provision that the mere fact that a juvenile is a runaway is insufficient to take a child into custody without a warrant or court order. The provision demands that a showing be made that the runaway's health, safety, and welfare are also in jeopardy. At the time Officer Sigler obtained reasonable grounds to believe the defendant was a runaway, the defendant was at police headquarters. Nothing in the record mildly suggests the defendant's health, safety, or welfare was endangered while he was at police headquarters. There was no evidence the defendant was (1) behaving in a self-destructive way, (2) exposed to imminent physical harm, (3) was under the influence of drugs or alcohol, or (4) was incoherent and confused. Under this strict application of the statute, Officer Sigler had no basis to arrest the defendant. In the absence of these circumstances the Legislature contemplated that an officer would call the parents of the juvenile and not place him or her under arrest.

■ Upon learning that the defendant was a runaway, Officer Sigler announced to the juvenile that he was under arrest. Since W. Va.Code, 49–5–8(b)(3), was not satisfied here, it was necessary for Officer Sigler to have probable cause to arrest the defendant. Syl. pt. 6, *Duvernoy, supra.* Officer Sigler did not have probable cause; therefore, the actual arrest was unlawful. Officer Sigler then informed the juvenile that a search of his person would take place. Under a lawful custodial arrest, a full search of a suspect is valid. *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427, 441 (1973) ("in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment"). However, we have determined that no valid arrest of the defendant occurred.[12] The defendant was searched and crack cocaine was found on him. Since this search was unconstitutional, "the evidence which was subsequently seized ... was inadmissible" and should have been suppressed. *State v. Hlavacek,* 185 W.Va. 371, 379, 407 S.E.2d 375, 383 (1991).

### III.

### CONCLUSION

For the foregoing reasons, we reverse the circuit court's order and remand the case for further proceedings consistent with this opinion.

Reversed and remanded.

error is a clerical error of a court employee and not the fault of the police. *Arizona v. Evans,* —— U.S. ——, ——, 115 S.Ct. 1185, 1187, 131 L.Ed.2d 34, 38–39 (1995). In *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), and *United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), the Court suggested that the admissibility of evidence rests on whether the information in the bulletin withstands Fourth Amendment analysis, not on whether the arresting officer acted in good faith reliance on the bulletin. The *Evans* majority suggested these cases are still good law by noting that its ruling would not necessarily apply if the persons maintaining the computer were "police personnel" rather than court personnel.

The defendant contends his mother withdrew the runaway petition against him about a week before this incident and the NCIC data was therefore incorrect. There is nothing in the record to suggest that Officer Sigler was aware that the data he received from NCIC was incorrect. As a reporting system, NCIC is reasonably relied upon as accurate by law enforcement officers. Of course, there is a significant difference between an outstanding arrest warrant and an outstanding juvenile petition. The former carries with it judicial authorization for its execution; the latter must be effectuated by either a capias, a court order, or an arrest warrant, all of which was lacking in this case.

**12.** The facts of this case do not implicate a stop and frisk search under *Terry.*