483 S.E.2d 240

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Ricky PENWELL, Defendant Below, Appellant.**

**No. 23336.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 25, 1996.

Decided Oct. 15, 1996.

Rehearing Refused Jan. 16, 1997.

---

Scott E. Johnson, Assistant Attorney General, Charleston, for Appellee.

David A. Camilletti, Shepherdstown, for Appellant.

PER CURIAM:

This is an appeal by the defendant, Ricky Penwell, from an order of the Circuit Court of Jefferson County sentencing him on five charges contained in a five-count indictment returned against him by a Jefferson County grand jury. Specifically, the defendant was convicted of aggravated robbery, assault during the commission of a felony, obstructing a police officer, and unauthorized taking of a vehicle. As a consequence of his convictions, the defendant was sentenced to life in the State penitentiary as a recidivist and to lesser periods of time on individual charges. On appeal, the defendant claims that the trial court should have found that the assault during the commission of a felony charge contained in the indictment was a lesser included offense in the aggravated robbery charge and that by not doing so the trial court violated double jeopardy principles in allowing convictions on both charges and imposing sentences, specifically the recidivist sentence, growing out of the two charges. The defendant also claims that the trial court erred in failing to grant him a change in venue and

that the court should have severed the trial of certain charges in the indictment from the trial of other charges in the indictment.

After reviewing the issues presented and the record filed, this Court cannot conclude that the circuit court committed reversible error. The judgment of the Circuit Court of Jefferson County is, therefore, affirmed.

At approximately 1:30 a.m. on May 12, 1994, Glen K. Penwell, who was not closely related to the defendant, Ricky Penwell, but knew him, picked up the defendant and a friend, Carlin Bell, who were hitchhiking. After dropping Carlin Bell off at his residence, Glen K. Penwell proceeded to take the defendant home with him. There, Glen K. Penwell and the defendant drank beer and watched a porno movie. Later, the defendant suggested that they go to bed. They proceeded to bed, and once there the defendant suggested that they engage in sex. According to Glen K. Penwell, he was not interested and refused. A struggle ensued, and in the struggle the defendant knocked Glen K. Penwell unconscious and tied him to his bedposts with pieces of torn bed sheets and a telephone cord. He proceeded to take certain items of Glen K. Penwell's property, including his 1986 Chevrolet Blazer.

Glen K. Penwell was found by neighbors later that day, tied to his bed. The State Police were contacted and began searching for the defendant and the missing vehicle. Some five days later, on May 17, 1994, the defendant was observed operating another vehicle, an older model Oldsmobile with ex-pired Maryland plates. A Jefferson County sheriff's deputy gave chase, and ultimately the defendant lost control of his vehicle and wrecked it. The defendant was taken into custody and handcuffed with his hands behind his back. He was placed in the front seat of the deputy's cruiser while the deputy and several other police officers busied themselves investigating the wreck. While they were so occupied, the defendant maneuvered his hands around to the front of his body, slid across the front seat, and drove off with the deputy's vehicle and its contents. The officers on the scene began a fresh pursuit, but lost sight of the vehicle. Despite a massive search, it was a considerable time before the defendant was ultimately located and again taken into custody.

Subsequent to these events, the defendant was indicted during the September, 1994 term of the Jefferson County Grand Jury in a five-count indictment, which charged him with aggravated robbery in violation of W.Va.Code § 61–2–12 (Count I),[1] assault during the commission of a felony, in violation of W.Va.Code § 61–2–10 (Count II),[2] obstructing a police officer, in violation of W.Va.Code § 61–5–17 (Count III), unauthorized taking of a vehicle in violation of W.Va. Code § 17A–8–4 (Count IV), and petty larceny in violation of W.Va.Code § 61–3–13 (Count V). The first two counts were grounded on the beating and robbery of Glen K. Penwell which occurred on May 12, 1994. The remaining counts were based on the events which occurred on May 17, 1994, when

1. Count I of the indictment stated:

   RICKY L. PENWELL on or about the ____ day of May, 1994, in the County of Jefferson, State of West Virginia, committed the offense of AGGRAVATED ROBBERY in that the said RICKY L. PENWELL did then and there partially strangle, suffocate, beat and strike Glen k. Penwell with an object and did tie Glen K. Penwell up and, by force and violence, threaten to kill Glen K. Penwell, putting Glen K. Penwell in fear of bodily injury and in jeopardy of loss of his life, and RICKY L. PENWELL then and there did violently and feloniously steal, take and carry away from the person and presence and from the control of Glen K. Penwell, the keys to a 1986 Chevrolet Blazer motor vehicle, a 1986 Chevrolet Blazer motor vehicle, a VCR and a rifle, all of which person-al property of value lawfully belonged to Glen K. Penwell, against his will, against the peace and dignity of the State of West Virginia in violation of *West Virginia Code* § 61–2–12 as amended.

2. Count II of the indictment stated:

   That RICKY L. PENWELL on or about the ____ day of May, 1994, in the County of Jefferson, State of West Virginia, committed the offense of ASSAULT DURING THE COMMISSION OF A FELONY in that the said RICKY L. PENWELL did then and there unlawfully and feloniously cut and wound Glen K. Penwell during the commission of Aggravated Robbery, a felony offense, at the same time, date and place, against the peace and dignity of the State of West Virginia in violation of *West Virginia Code* § 61–2–10 as amended.

the defendant escaped with the police cruiser and the personal property which it contained.

Prior to trial, on November 10, 1994, the defendant moved for a change of venue. Later, on December 1, 1994, he filed a motion with the circuit court to dismiss Count II of the indictment, the count charging him with assault during the commission of a felony, on the ground that the crime was a lesser included offense in and merged with the aggravated robbery charge contained in Count I of the indictment. Still later, on December 5, 1994, the defendant moved to sever the trial of Counts III, IV, and V of the indictment from the trial of Counts I and II. The circuit court denied the motion for change of venue and on December 20, 1994, refused to declare the assault during the commission of a felony charge a lesser included offense in the aggravated robbery charge. On December 20, 1994, the court also granted a severance of the trial of Count V of the indictment from the trial of the other charges, but refused to grant a severance of the trial of Counts III and IV from the trial of Counts I and II.

■ On appeal, the defendant's first claim is that the trial court erred in denying his motion to dismiss Count II of the indictment. He specifically argues that double jeopardy principles normally bar successive prosecutions for greater and lesser included offenses which occur in the same sequence of events. *Conner v. Griffith*, 160 W.Va. 680, 238 S.E.2d 529 (1977), and *Payne v. Virginia*, 468 U.S. 1062, 104 S.Ct. 3573, 82 L.Ed.2d 801 (1984). He does recognize that there is an exception where the legislature has clearly indicated that multiple punishments are to be assigned. *Conner v. Griffith, Id.*

■ In *State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (1992), this Court discussed at some length whether one offense is so included in another that imposition of multiple punishments for multiple offenses growing out of the same sequence of events would violate double jeopardy principles. In syllabus point 7 of *State v. Gill*, the Court stated:

A claim that double jeopardy has been violated based on multiple punishments imposed after a single trial is resolved by

determining the legislative intent as to punishment.

The Court then proceeded to state, in syllabus point 8:

In ascertaining legislative intent, a court should look initially at the language of the involved statutes and, if necessary, the legislative history to determine if the legislature has made a clear expression of its intention to aggregate sentences for related crimes. If no such clear legislative intent can be discerned, then the court should analyze the statutes under the test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether each offense requires an element of proof the other does not. If there is an element of proof that is different, then the presumption is that the legislature intended to create separate offenses.

As previously indicated, the two counts which the defendant claims that the trial court should have severed in the present case were Counts I and II of the indictment against him. Count I charged him with aggravated robbery, in violation of W.Va.Code § 61–2–12, and Count II charged him with assault during the commission of a felony, in violation of W.Va.Code § 61–2–10.

As it relates to the issues in the present case, the portion of W.Va.Code § 61–2–12 dealing with the aggravated robbery charge of which the defendant was ultimately convicted, states:

If any person commit, or attempt to commit, robbery by partial strangulation or suffocation, or by striking or beating, or by other violence to the person, or by the threat or presenting of firearms, or other deadly weapons or instrumentality whatsoever, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than ten years....

West Virginia Code § 61–2–10, which formed the basis of the second count in the indictment against the defendant, states:

If any person in the commission of, or attempt to commit a felony, unlawfully shoot, stab, cut or wound another person, he shall be guilty of a felony, and, upon

conviction, shall, in the discretion of the court, either be confined in the penitentiary not less than two nor more than ten years, or be confined in jail not exceeding one year and be fined not exceeding one thousand dollars.

As indicated in syllabus point 8 of *State v. Gill, Id.,* the principal inquiry for this Court on the issue under discussion is to review the language of the statutes in question to attempt to ascertain legislative intent. In approaching questions of legislative intent, this Court is guided by the rule that: "It is always presumed that the legislature will not enact a meaningless or useless statute." Syllabus point 4, *State ex rel. Hardesty v. Aracoma–Chief Logan No. 4523, Veterans of Foreign Wars of the United States,* 147 W.Va. 645, 129 S.E.2d 921 (1963). *See also Slack v. Jacob,* 8 W.Va. 612 (1875).

We note that, as a practical matter: "An offense, in order to be a lesser included offense, must be a less serious crime in terms of its classification and degree...." 42 C.J.S. *Indictments and Informations* § 218 (1991). The defendant asserts that the crime of assault in the commission of a felony is a "lesser included" offense within the crime of "aggravated robbery." We do not agree. Assault in the commission of a felony is, like aggravated robbery, classified as a felony; however, it carries a penalty of confinement in the penitentiary of two to ten years. Aggravated robbery, on the other hand, carries a penalty of not less than ten years and in this case resulted in the imposition of a sentence of fifty years. Thus, aggravated robbery is the more serious offense and can not be seen in that light, as a "lesser included" offense within the offense of assault in the commission of a felony. Assault in the commission of a felony is clearly the "lesser" offense. Moreover, we believe that the clear intent of the legislature to create two separate offenses, with two punishments, can be clearly seen from a fair analysis the elements of the two offenses, as expressed in the respective statutes.

A careful reading of W.Va.Code §§ 61–2–12 and 61–2–10 shows that it is quite possible to commit aggravated robbery under W.Va.Code § 61–2–12 by presenting firearms or other deadly weapons without actually shooting, stabbing, cutting, or wounding the victim. Similarly, it would be possible to restrain a robbery victim by violence, or to throw him to the ground violently, without shooting, stabbing, cutting, or wounding him in violation of W.Va.Code § 61–2–10. However, it is readily apparent that it would not be possible under W.Va. Code § 61–2–10 to prove an assault in the commission of, or attempt to commit, the felony of aggravated robbery without proving each and every element of the commission of, or attempt to commit, the crime of aggravated robbery. Thus, in this Court's view, it is not possible, on the facts of the case before us, to prove the "lesser" offense defined in W.Va.Code § 61–2–10, assault in the commission of a felony, without proving the "greater" offense, defined in W.Va.Code § 61–2–12, aggravated robbery. Rather, we conclude that by enacting the offense of assault during the commission of a felony, the legislature clearly intended to impose punishment in addition to that specified for the underlying felony, if the criminal actor shot, cut, stabbed, or wounded another person during the attempt to commit or the commission of the underlying felony and to classify that additional conduct as felonious. In short, W.Va.Code § 61–2–10 acts as an enhancement statute where conduct otherwise defined as felonious is executed in such a manner that another person—a victim of the underlying felony or a witness or other bystander—is shot, cut, stabbed, or wounded in the process. In light of our conclusion that the legislative intent to create two separate offenses can be discerned from the language of the statutes under discussion here, we need not proceed to next step suggested in *Gill,* the application of the *Blockburger* test.

Having concluded that the legislature intended W.Va.Code § 61–2–10 to provide for enhancement of a sentence imposed for another felony, where the felony was committed by shooting, stabbing, cutting, or wounding, we cannot conclude in the present case that the trial court erred in refusing to dismiss Count II of the indictment in the present case.

■ The defendant's next claim is that the trial court erred in failing to grant his motion for a change of venue.

In his motion for a change of venue filed on November 14, 1994, the defendant claimed that he was a life-long resident of Jefferson County and that he was a convicted felon. He also claimed that Joey Penwell, his brother, was also a life-long resident of Jefferson County and a convicted felon and that the Penwell name was associated in Jefferson County with antisocial and criminal behavior. He also argued that the circumstances surrounding his arrest were extensively covered by the media and that the local paper had run front-page headline news stories relating to him for several days. He claimed that the media had characterized him as a dangerous person and that because of the extensive hostile sentiments against him he could not get a fair trial in Jefferson County.

The trial judge denied the motion for change of venue on November 24, 1994, but indicated that it would allow the defense to reassert the motion at the time the jury was selected. When the court convened for the actual trial, at no time during or after voir dire did the defense renew the motion for change of venue.

During the voir dire portion of the trial, potential jurors were carefully questions regarding what they knew of the defendant's case and what their attitude was toward the defendant. Although several indicated that they had read newspaper articles and had talked about the case, they indicated that they could disregard all that they had read or heard and render a verdict based solely upon the law and evidence presented.

On appeal, the State essentially takes the position that by failing to renew the motion for change of venue at the commencement of trial, or during or after voir dire, the defendant, in effect, waived any appellate review of the change of venue issue. The State also takes the position that, given the facts developed during the jury selection process, the trial court did not abuse its discretion in denying the motion for change of venue.

Recently, in *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994), this Court indicated that appellate review of rulings on motions for change of venue, including the issue of whether the defendant has demonstrated good cause for a change of venue, was to be made under an abuse of discretion standard. Further, the Court indicated that in determining whether an abuse of discretion had occurred, the Court should consider not only the pretrial showing, but what had actually occurred during the voir dire of the jury venire.

■ Further, in syllabus point 2, the Court in *State v. Derr* reiterated the long-standing test which should be applied by a trial court in making the decision to grant or deny a motion for change of venue. That test provides:

" 'A present hostile sentiment against an accused, extending throughout the entire county in which he is brought to trial, is good cause for removing the case to another county.' Point 2, Syllabus, *State v. Dandy*, 151 W.Va. 547, 153 S.E.2d 507 (1967), *quoting* Point 1, Syllabus, *State v. Siers*, 103 W.Va. 30, 136 S.E. 503 (1927)." Syllabus Point 2, *State v. Sette*, 161 W.Va. 384, 242 S.E.2d 464 (1978).

The Court also held, in syllabus point 3:

One of the inquiries on a motion for a change of venue should not be whether the community remembered or heard the facts of the case, but whether the jurors had such fixed opinions that they could not judge impartially the guilt or innocence of the defendant.

In the case presently before the Court, the defendant did demonstrate that there had been substantial publicity concerning him and his case in Jefferson County, and during jury voir dire ten of the potential jurors indicated that they had heard of the defendant's case, either through the media or through conversations with others. The circuit court exhaustively examined these potential jurors. At the conclusion of the examination, the court struck two individuals for cause. One had formed an opinion of the defendant's guilt on what he had read in the papers. The other had rather rigid opinions on the basis of what she had read. As previously indicated, the remaining jurors who had knowledge of the case indicated that they could render a verdict solely on the law and evidence presented.

In examining the overall circumstances of the case, this Court cannot conclude that the trial judge abused his discretion in concluding that there was not good cause for changing the venue of the trial or that he abused his discretion in denying the defendant's motion for a change of venue.

■ The defendant's last claim is that the trial court should have severed the trial of Counts III, IV, and V of the indictment from the trial of Counts I and II. The defendant takes the position that Counts III, IV, and V, the obstruction, unauthorized taking of a vehicle, and petty larceny counts, all misdemeanors, occurred at the time the defendant escaped with the deputy's cruiser, approximately one week after the assault and robbery of Glen Keith Penwell on May 12, 1994. Counts I and II of the indictment dealt with the actual assault and aggravated robbery. The defendant argues that the events surrounding his taking of the deputy's cruiser had nothing to do with the aggravated robbery or assault charge and that the trial of the events relating to the taking of the cruiser only served to prejudice him during the trial of the aggravated robbery and assault charges.

As has been previously stated, the trial court allowed the severance of Count V, dealing with petty larceny, from the trial of the other charges. The court, however, did allow Counts I, II, III, and IV to be tried together.

■ Recently, in *State v. Ludwick*, 197 W.Va. 70, 475 S.E.2d 70 (1996), this Court examined the question of when a trial court should sever the trial of various counts contained in an indictment. The Court reiterated the basic rule set forth in syllabus point 3 of *State v. Hatfield*, 181 W.Va. 106, 380 S.E.2d 670 (1988), that:

> Even where joinder or consolidation of offenses is proper under the West Virginia Rules of Criminal Procedure, the trial court may order separate trials pursuant to Rule 14(a) on the ground that such joinder or consolidation is prejudicial. The decision to grant a motion for severance pursuant to W.Va.R.Crim.P. 14(a) is a matter within the sound discretion of the trial court.

In the body of *State v. Ludwick, supra,* the Court stated:

Rule 14 of the West Virginia Rules of Criminal Procedure is modeled on Rule 14 of the Federal Rules of Criminal Procedure, and under Federal law it appears that it is incumbent upon a trial judge to consider in some depth a motion to grant a severance if: (a) a joint trial will raise so many issues that a jury may conclude that the defendant is a "bad man" and must have done something, and consequently will convict him as a "bad man" rather than on a particular charge; (b) if one offense may be used to convict him of another, though proof of that guilt would have been inadmissible at a separate trial; and (c) the defendant may wish to testify in his own defense on one charge but not on another. *See* C.A. Wright, Federal Practice and Procedure: Criminal 2d § 222 (1982).

In the present case, it appears that the defendant is raising the second point discussed in *State v. Ludwick,* that is, that by failing to grant severance there was a danger that the jury would use evidence of one offense to convict him of the other, even though proof of guilt would have been inadmissible at a separate trial. The Court notes that the defendant specifically states in his brief:

> [I]t becomes clear that the court should have granted severance in order to avoid use by the State of unrelated crime evidence whose introduction served to inflame the jury as opposed to proving the underlying felony of Aggravated Robbery.

In reviewing federal authority relating to severance of multiple counts, this Court notes that it is widely recognized that prejudice is not present under the "other crimes" rule if evidence of each of the crimes charged would be admissible in a separate trial for the other. *See* C.A. Wright, Federal Practice and Procedure: Criminal 2d § 222 (1982).

This Court believes that in the present case the evidence of the defendant's obstruction of a police office and unauthorized taking of the police vehicle would have been admissible on the robbery count as flight evidence. *See, e.g., State v. Meade,* 196 W.Va. 551, 474 S.E.2d 481 (1996). Likewise, the evidence of the aggravated robbery would have been ad-

missible to show the defendant's motive in taking the police cruiser, as well as his motive in obstructing a police officer.

Having concluded that the evidence of the crimes contained in Counts I and II would have been admissible during the trial of Counts III and IV, and that the evidence of the crimes contained in Counts III and IV would have been admissible in the trial of Counts I and II, and believing that the federal courts have correctly concluded that it is not prejudicial for a trial court to deny severance of various counts under the "other crimes" rule if evidence of each of the crimes charged would have been admissible in a separate trial for the other, this Court cannot conclude that the trial court in the present case abused its sound discretion in refusing to grant the defendant the severance which he sought.

For the reasons stated, the judgment of the Circuit Court of Jefferson County is affirmed.

Affirmed.

RECHT, Judge, sitting by temporary assignment.