511 S.E.2d 828

**STATE of West Virginia, Appellee,**

v.

**Barbara Jean MILBURN, Appellant.**

**No. 25006.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 9, 1998.

Decided Dec. 7, 1998.

Dissenting Opinion of Chief Justice Davis, Dec. 16, 1998.

206 |

206Darrell V. McGraw, Jr., Esq., Attorney General, Rory L. Perry, II, Esq., Assistant Attorney General, Charleston, West Virginia, Attorneys for the Appellee.

Robert C. Stone, Jr., Esq., Martinsburg, West Virginia, Attorney for the Appellant.

MAYNARD, Justice:

This case is before this Court upon appeal from a final order of the Circuit Court of Jefferson County entered on February 28, 1997. The appellant, Barbara J. Milburn, was convicted of first degree murder with mercy, second degree arson, and two counts of providing false information to a state police officer. On appeal, the appellant raises several assignments of error. Upon review of the record, we have determined that only three of the assignments of error warrant discussion. Specifically, we address the appellant's contentions that the circuit court erred by: (1) denying her motion to sever the various counts in her indictment; (2) denying her motion to suppress statements, including two confessions, she made to the police; and (3) not admitting into evidence statements made to the police by her juvenile co-defendant.

The appellant also claims the circuit court erred by: (1) refusing to permit her to offer into evidence additional statements made by her co-defendant and polygraph test results of a second suspect; (2) failing to declare a mistrial when the jury initially reported that it was unable to reach a verdict on two of the counts; (3) failing to declare a mistrial following a reference by one of the witnesses to the appellant's Fifth Amendment privilege; (4) failing to grant her motion for judgment of acquittal on the basis that there was insufficient evidence to support the verdicts; and (5) failing to grant her requests for instructions relating to voluntary manslaughter, self-defense, and malice. Upon careful review of the record, we find these assignments of error lack merit.

This Court has before it the petition for appeal, all matters of record, and the briefs and argument of counsel. For the reasons set forth below, the appellant's convictions are affirmed.

## I.

On June 19, 1995, Judy Jenkins was killed when she was shot twice in the head.[1] The murder occurred in Ms. Jenkins' home which she shared with the appellant and the appellant's adopted son and daughter. The crime was reported by the appellant and her son, Steven T.,[2] in person at the Charles Town Police Department. The appellant stated that she and Steven T. had been sleeping in a camping trailer located next to the house when she heard two gunshots.[3] She looked outside but did not see anyone. When she went into the house, she discovered that Ms. Jenkins had been shot. She tried to call for help, but the phone lines had been cut.

Initially, the murder investigation focused on Johnson Lykens, a married man with whom Ms. Jenkins had allegedly had an affair.[4] However, the police had very little evidence and the investigation continued for six months. During this period, the appellant was very helpful and cooperative with the investigating officers and provided much information and insight into the case.[5]

A break in the case finally occurred in December 1995, following a suspicious barn fire at the farm where Ms. Jenkins and the appellant had lived.[6] The appellant reported that she had been watching television when she heard the crash of breaking glass. She discovered a rock had been thrown through the window of her home. When she looked out the window, she saw the barn ablaze.

While investigating the arson, State Trooper Jose Centeno noticed small footprints leading to the phone lines at the back of the appellant's house. Prior to the fire, the appellant had told the police that she was afraid of an unknown person who was spying on her and lurking around her residence. She also complained that someone had cut her phone lines again. After observing that the footprints appeared to belong to a child or possibly a female, Trooper Centeno advised the appellant that he believed that she might know something about the fire and other incidents that she had reported. At this point, the appellant became nervous. When the officer informed the appellant that surveillance equipment might have been put in place prior to the fire, the appellant became even more nervous. Trooper Centeno asked the appellant to come to his office for further questioning. He mentioned that if any video tapes of her property existed, they could be reviewed at that time.

On December 18, 1995, the appellant voluntarily went to the state police barracks near Charles Town. During the course of questioning that day, the appellant confessed to starting the barn fire and murdering Ms. Jenkins. The appellant also implicated Steven T. stating that he helped dispose of the gun used to commit the murder by throwing it in the Shenandoah River.[7] Steven T. was questioned by the police the next day. In one of two statements he gave to the police, Steven T. confessed to firing the first shot at Ms. Jenkins.[8]

---

1. Ms. Jenkins lived for several hours after she was shot, but never regained consciousness.

2. We continue our practice of using initials to identify children in cases involving sensitive facts. *See In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

3. The appellant's daughter was spending the night with her grandmother and was not at home.

4. Apparently, the appellant and Ms. Jenkins maintained an intimate relationship.

5. For example, the appellant suggested that the murder weapon, which had not been recovered,

might have been disposed of by Mr. Lykens in a sinkhole on his farm.

6. The barn and the house were owned by Margaret Dailey, Ms. Jenkins' mother. The barn had been used to store property belonging to the appellant and Ms. Jenkins. The appellant was still living on the property.

7. The murder weapon was never recovered.

8. Steven T. later retracted his confession and maintained that he only helped dispose of the gun. *See In the Matter of Steven William T.*, 201 W.Va. 654, 499 S.E.2d 876 (1997).

Thereafter, the appellant was arrested and eventually indicted. On December 23, 1997, following a five-day jury trial, she was found guilty of first degree murder, second degree arson, and two counts of providing false information to a state police officer. The jury gave a recommendation of mercy with respect to the murder conviction.

## II.

■ The appellant first contends that the circuit court erred by denying her motion to sever the various counts of her indictment. Pursuant to Rule 14(a) of the West Virginia Rules of Criminal Procedure,[9] the appellant moved to have the murder charge severed from the remaining charges on the basis that the evidence regarding the arson, which occurred six months after the homicide, was inadmissible in the murder trial. The appellant claims that the jury might have concluded that she was a "bad person" as a result of the arson offense and convicted her of murder for that reason or vice versa. The appellant also argues that she was denied her Fifth Amendment privilege because she could not testify regarding one of the charges without being subjected to cross-examination on all of the charges.

■ In Syllabus Point 3 of *State v. Hatfield*, 181 W.Va. 106, 380 S.E.2d 670 (1988), we held that:

> Even where joinder or consolidation of offenses is proper under the West Virginia Rules of Criminal Procedure, the trial court may order separate trials pursuant to Rule 14(a) on the ground that such joinder or consolidation is prejudicial. The decision to grant a motion for severance pursuant to W.Va.R.Crim.P. 14(a) is a matter within the sound discretion of the trial court.

However, we have also recognized that:

> Rule 14 of the West Virginia Rules of Criminal Procedure is modelled [sic] on Rule 14 of the Federal Rules of Criminal Procedure, and under federal law it appears that it is incumbent upon a trial judge to consider in some depth a motion to grant a severance if: (a) a joint trial will raise so many issues that a jury may conclude that the defendant is a 'bad [person]' and must have done something, and consequently will convict him as a 'bad [person]' rather than on a particular charge; (b) if one offense may be used to convict him of another, though proof of that guilt would have been inadmissible at a separate trial; and (c) the defendant may wish to testify in his own defense on one charge but not on another. *See* C.A. Wright, Federal Practice and Procedure: Criminal 2d § 222 (1982).

*State v. Ludwick*, 197 W.Va. 70, 73, 475 S.E.2d 70, 73 (1996).

Appellant essentially argues that all three kinds of prejudice discussed in *Ludwick* occurred in her case. We disagree. Upon review of the record, we find that the circuit court thoroughly considered the appellant's arguments, but concluded that the offenses she was charged with were all part of a common scheme or plan, thereby making joinder proper. The circuit court observed that there was an active, ongoing investigation which continued between the time of the murder and the commission of the arson. The appellant was closely involved in that investigation for most of the time, supplying information to the police. In an apparent effort to subvert attention from herself as a suspect in the murder of Ms. Jenkins, the appellant burned a barn located on the same property where the homicide occurred. Based on these facts, the circuit court determined that even if the charges were severed, it was likely that the evidence relating to the murder would be admissible during the trial on the arson and providing false information charges. Likewise, the arson evidence would be admissible during the murder trial.

■ In *State v. Penwell*, 199 W.Va. 111, 483 S.E.2d 240 (1996), we found that the defendant was not entitled to severance of aggravated robbery and assault charges from

---

9. Rule 14(a) provides, in pertinent part:

If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of the counts or provide whatever other relief justice requires.

his other charges of obstructing a police officer and unauthorized taking of a police vehicle. We stated that:

> In reviewing federal authority relating to severance of multiple counts, this Court notes that it is widely recognized that prejudice is not present under the 'other crimes' rule if evidence of each of the crimes charged would be admissible in a separate trial for the other. *See* C.A. Wright, Federal Practice and Procedure: Criminal 2d § 222 (1982).

199 W.Va. at 118, 483 S.E.2d at 247. In this case, we believe the evidence of the arson would have been admissible on the murder count to explain the appellant's attempt to divert attention from herself as a suspect of that crime. Likewise, we believe that the murder evidence would have been admissible to show motive for the arson. As we discussed in *Penwell*, clearly, a defendant is not entitled to relief from prejudicial joinder pursuant to Rule 14 of the West Virginia Rules of Criminal Procedures when evidence of each of the crimes charged would be admissible in a separate trial for the other.

■ Similarly, because of the connection between all the crimes charged, the record does not support the appellant's assertion that the jury may have considered her to be a "bad person" and, therefore, based its convictions on a cumulation of the evidence. Generally, this type of alleged prejudice is rarely sufficient to grant relief against joinder. C.A. Wright, Federal Practice and Procedure, Criminal 2d § 222 (1982). *See also* *U.S. v. Morris*, 647 F.2d 568 (5th Cir.1981); *U.S. v. Shearer*, 606 F.2d 819 (8th Cir.1979). Here, the evidence against the appellant was equally strong for each crime for which she was charged, i.e. she confessed to both the murder and the arson.

■ Finally, the appellant asserts that the charges should have been severed because she would have been subject to cross-examination on all charges if she had testified. In this regard, the appellant relies upon *Ludwick, supra*, which we remanded for further hearing regarding the defendant's motion to sever charges of third-offense driving under

influence and third-offense driving while license suspended for driving under the influence. In *Ludwick*, we could not see how the defendant could convincingly testify that he was not driving under the influence, yet not clearly establish by his testimony the fact that he was driving while his license was suspended. Thus, we remanded the case. Unlike the defendant in *Ludwick*, the appellant has not showed that she had important testimony to give regarding one of the counts, but needed to refrain from testifying about one of the other counts. There is no need for severance until a defendant makes a convincing showing both that he or she has important testimony to give regarding one count and a strong need to refrain from testifying on the other count. *See* C.A. Wright, Federal Practice and Procedure, Criminal 2d § 222 (1982). Accordingly, we conclude that the circuit court did not abuse its discretion in denying the appellant's motion to sever.

### III.

■ Next, the appellant contends that the circuit court erred by not granting her motion to suppress statements she made to the police. This is an unusual case because the appellant gave eighteen statements to the police during the course of the murder investigation. It almost seems that the police could not stop the appellant from talking if they tried. Nonetheless, the appellant now claims that four of the statements she gave should have been suppressed.

First, the appellant sought to suppress a June 21, 1995 statement which served as the basis for the conviction on count three, providing false information to a state police officer. In this statement, given shortly after Ms. Jenkins was murdered, the appellant denied all involvement in the crime stating that she discovered Ms. Jenkins' body after she heard two gunshots. The appellant was not read her *Miranda*[10] rights because according to Trooper Joseph Adams "she was not in custody and [he] wasn't asking any accusatory questions." This statement was unsigned.

---

10. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

On December 11, 1995, the appellant gave another statement to the police. This statement concerned a barn fire which had just occurred near her home. This time, the appellant was given *Miranda* warnings by Trooper Centeno who took her statement. He described the appellant's demeanor as scared and nervous. This statement served as the basis for the conviction on count four, providing false information to a state police officer.

The appellant claims that when these two statements were given she was under "de facto arrest" as set forth in *State v. Jones,* 193 W.Va. 378, 456 S.E.2d 459 (1995). In Syllabus Point 2 of *Jones,* we held that:

If the police merely question a suspect on the street without detaining him against his will, Section 6 of Article III of the West Virginia Constitution is not implicated and no justification for the officer's conduct need be shown. At the point where a reasonable person believes he is being detained and is not free to leave, then a stop has occurred and Section 6 of Article III is triggered, requiring that the officer have reasonable suspicion that criminal activity is afoot. If the nature and duration of the detention arise to the level of a full-scale arrest or its equivalent, probable cause must be shown. Thus, the police cannot seize an individual, take him involuntarily to a police station, and detain him for interrogation purposes while lacking probable cause to make an arrest.

Essentially, the appellant claims that her statements were the result of custodial interrogation, and therefore should be suppressed. We disagree.

▮▮▮▮ In Syllabus Points 1 and 2 of *State v. Lacy,* 196 W.Va. 104, 468 S.E.2d 719 (1996), we set forth our standard of review for a motion to suppress:

When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

In contrast to a review of the circuit court's factual findings, the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo.* Similarly, an appellate court reviews *de novo* whether a search warrant was too broad. Thus, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of law, or, based on the entire record, it is clear that a mistake has been made.

We have also stated that: "Whether an extrajudicial inculpatory statement is voluntary or the result of coercive police activity is a legal question to be determined from a review of the totality of the circumstances." Syllabus Point 2, *State v. Bradshaw,* 193 W.Va. 519, 457 S.E.2d 456 (1995), *cert. denied,* 516 U.S. 872, 116 S.Ct. 196, 133 L.Ed.2d 131 (1995).

Considering the totality of the circumstances, we conclude that the statements given by the appellant on June 21, 1995 and December 11, 1995 were voluntary. We have held that "[a]n arrest is the detaining of the person of another by any act or speech that indicates an intention to take him into custody and that subjects him to the actual control and will of the person making the arrest." Syllabus Point 5, *State v. Wickline,* 184 W.Va. 12, 399 S.E.2d 42 (1990). Clearly, the appellant was not under arrest on June 21, 1995 or December 11, 1995. In fact, in both instances, the appellant was viewed as a victim reporting a crime. On June 21, 1995, the appellant provided information regarding the events surrounding the murder of Ms. Jenkins. Although the statement was given at the state police detachment near Charles Town, there is no evidence that the appellant was being detained at the time or coerced into giving a statement. Likewise, the appellant merely supplied details about the fire and the value of the property destroyed in

her December 11, 1995 statement. Therefore, the circuit court did not err in admitting these statements into evidence.

We now consider whether the confessions given by the appellant on December 18, 1995 should have been suppressed. The first confession was given at 11:00 a.m. that day and was reduced to writing around noon. At that time, the appellant admitted starting the fire in the barn. The appellant contends that this statement was not given voluntarily because she had taken various pain pills that day. In addition, she claims that she was coerced into giving the confession because Trooper Centeno misled her into believing that the police had surveillance tapes of her property. As mentioned above, when Trooper Centeno questioned the appellant at her home shortly after the fire, he informed her that video surveillance equipment may have been put in place by the police prior to the fire. According to the appellant, when she arrived at the police barracks for questioning on December 18, 1995, Trooper Centeno had two video tapes in a white plastic bag on the corner of his desk.

■ As to the voluntariness of a confession, we have held: "A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence." Syllabus Point 3, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978). *See also* Syllabus Point 3, *State v. Fortner*, 182 W.Va. 345, 387 S.E.2d 812 (1989). More recently, we have stated that:

> This Court is constitutionally obligated to give plenary, independent, and *de novo* review to the ultimate question of whether a particular confession is voluntary and whether the lower court applied the correct legal standard in making its determination. The holdings of prior West Virginia cases suggesting deference in this area continue, but that deference is limited to factual findings as opposed to legal conclusions.

Syllabus Point 2, *State v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994).

■ In Syllabus Point 6 of *State v. Worley*, 179 W.Va. 403, 369 S.E.2d 706 (1988), we

held that: "Misrepresentations made to a defendant or other deceptive practices by police officers will not necessarily invalidate a confession unless they are shown to have affected its voluntariness or reliability." See *also* Syllabus Point 8, *State v. Bradshaw*, 193 W.Va. 519, 457 S.E.2d 456 (1995); *State v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994). In *Worley*, the police told the defendant that another suspect had given a statement implicating him even though such a statement had not yet been obtained. We found that the misrepresentation alone was "not sufficient to overbear the defendant's free will." 179 W.Va. at 414, 369 S.E.2d at 717.

■ In this case, the record indicates that the appellant went to the police barracks on her own on the morning of December 18, 1995. She waited to speak with Trooper Centeno who was in charge of investigating the murder and with whom she had spoken on several previous occasions. Trooper Centeno informed the appellant that he wished to ask her some questions about the barn fire and the murder. He read the appellant her *Miranda* rights, but informed her that she was not under arrest and was free to leave at any time. The appellant acknowledged her rights and signed a waiver form. The appellant then gave two different versions of how the fire started in the barn before confessing to using gasoline to ignite the fire. Although Trooper Centeno was aware that the appellant had abused prescription drugs in the past, he testified at the suppression hearing that the appellant was not intoxicated at the time she gave her statement. In addition, Trooper Centeno stated that although there may have been videotapes laying around the station, they were not placed in the room to create anxiety in the appellant. Based upon these facts, we conclude that the appellant's arson confession was given voluntarily. She went to the police station by herself, spoke with an officer she had been dealing with on a friendly basis for months, and was advised of her *Miranda* rights. There is no evidence that the appellant was detained against her will or coerced into confessing to arson.

■ After giving the arson confession, the appellant was informed that the police wished to question her about the murder.

The appellant agreed to answer some questions, and eventually agreed to take a polygraph exam. The necessary arrangements were made and within a couple of hours the appellant took a polygraph test. Afterwards, she was informed that the test results indicated that she was being deceptive. She then confessed to murdering Ms. Jenkins. The confession occurred around 7:30 p.m. and the appellant was presented to a magistrate at approximately 10:00 p.m. that night. The appellant now contends that the police violated the prompt presentment rule. She claims that the police had probable cause to effectuate an arrest on the arson charge at noon. Instead of presenting her to a magistrate at that time, the police continued to question her and eventually elicited the murder confession.

■ In Syllabus Point 1 of *State v. Guthrie*, 173 W.Va. 290, 315 S.E.2d 397 (1984), we held that " '[t]he delay in taking a defendant to a magistrate may be a critical factor [in the totality of circumstances making a confession involuntary and hence inadmissable] where it appears that the primary purpose of the delay was to obtain a confession from the defendant.' Syllabus Point 6, *State v. Persinger*, [169] W.Va. [121], 286 S.E.2d 261 (1982), as amended." *See also* Syllabus Point 1, *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986). We further instructed in Syllabus Point 2 of *Humphrey* that:

> Our prompt presentment rule contained in W.Va.Code, 62-1-5, and Rule 5(a) of the West Virginia Rules of Criminal Procedure, is triggered when an accused is placed under arrest. Furthermore, once a defendant is in police custody with sufficient probable cause to warrant an arrest, the prompt presentment rule is also triggered.

At the suppression hearing, Trooper Centeno testified that after the appellant confessed to starting the barn fire, he again told her that he wanted to ask her some questions about Ms. Jenkins' murder. He informed the appellant that because she lied about the barn fire, he assumed she was lying when she gave information about the murder. During the suppression hearing, Trooper Centeno testified that at the time, he believed that the appellant knew who had shot Ms. Jenkins. However, he did not think she was the actual perpetrator. Trooper Centeno also testified that the appellant was not under arrest at that point. In fact, he suggested that she get some lunch, but she just chose to go outside and smoke a cigarette. When the questioning resumed, Trooper Centeno asked the appellant if she would take a polygraph exam. She agreed and Trooper Mark Carte of the Polygraph Unit was called to administer the test.

Once the testing equipment was set up, Trooper Carte explained the testing procedure and read the appellant her *Miranda* rights again. He explained to the appellant that she was not under arrest and was free to leave. The appellant indicated that she understood her rights and signed another waiver. After the test was completed, Trooper Carte told the appellant that the test results indicated that deception was present. The appellant then confessed to the murder.

Based upon the totality of the circumstances, we cannot conclude that prompt presentment rule was violated. The purpose of the delay in arresting the appellant and presenting her to a magistrate was not to obtain a confession for the crime for which the police had probable cause to arrest, i.e., the arson. Instead, the police sought to question the appellant at that time about a separate crime for which they had no probable cause to arrest. Moreover, it is evident from the police officers' testimony that they did not expect the appellant to confess to shooting Ms. Jenkins. They merely believed that she knew the identity of the perpetrator.

■ The additional delay that occurred after the murder confession was obtained was not a violation of the prompt presentment rule either. This delay was caused by the need to complete paperwork and the unavailability of a magistrate. On several previous occasions, we have indicated that "[o]rdinarily the delay in taking an accused who is under arrest to a magistrate after a confession has been obtained from him [or her] does not vitiate the confession under our prompt presentment rule." Syllabus Point 4,

*State v. Humphrey, supra. See also* Syllabus Point 9, *State v. Collins,* 186 W.Va. 1, 409 S.E.2d 181 (1990); Syllabus Point 2, *State v. Fortner,* 182 W.Va. 345, 387 S.E.2d 812 (1989). Accordingly, for the reasons set forth above, the circuit court did not err in denying the appellant's motion to suppress.

## IV.

▮▮▮ Finally, the appellant contends that the circuit court erred by refusing to admit portions of statements given to the police by Steven T., her juvenile co-defendant. The circuit court ruled that the statements would have to be admitted in their totality or not at all because they were untrustworthy. In so ruling, the appellant claims that the circuit court misapplied the test set forth in *State v. Mason,* 194 W.Va. 221, 460 S.E.2d 36 (1995), regarding the admissibility of a statement against interest pursuant to W.Va. R. Evid. 804(b)(3).[11] In Syllabus Point 8 of *Mason,* we held:

> "To satisfy the admissibility requirements under Rule 804(b)(3) of the West Virginia Rules of Evidence, a trial court must determine: (a) The existence of each separate statement in the narrative; (b) whether each statement was against the penal interest of the declarant; (c) whether corroborating circumstances exist indicating the trustworthiness of the statement; and (d) whether the declarant is unavailable."

*See also* Syllabus Point 3, *In the Interest of Anthony Ray Mc.,* 200 W.Va. 312, 489 S.E.2d 289 (1997).

The State maintains that the circuit court performed a proper analysis of Steven T.'s statements under *Mason.* In addition, the State argues that no prejudice resulted from the circuit court's ruling because the appellant subsequently agreed to the admission of

Steven T.'s statements in their entirety. We agree. The record indicates that the circuit court performed the analysis required by *Mason* and *Anthony Ray Mc.* and concluded that the co-defendant's statements were not admissible under Rule 804(b)(3) because there were no corroborating circumstances indicating that the statements were reliable. The circuit court explained that the appellant and co-defendant had a life-long mother/child relationship. As a result, there may have been a desire on the part of the co-defendant to offer exculpatory statements in an effort to help his mother. In addition, the circuit court considered the co-defendant's age. The court determined that at age fourteen, it would be difficult to conclude that the co-defendant could understand or appreciate his penal interests. Finally, the circuit court noted the internal inconsistencies between the co-defendant's two statements.[12] Considering all of these factors, the circuit court did not err in concluding that the co-defendant statements were not sufficiently reliable to be admitted into evidence pursuant to Rule 804(b)(3).

Accordingly, based on all the above, the final order of the Circuit Court of Jefferson County entered on February 28, 1997, is affirmed.

Affirmed.

Justices WORKMAN, STARCHER and McCUSKEY joined in the Opinion of the Court.

Chief Justice DAVIS dissents.

Justice McGRAW did not participate in the decision of this case.

---

11. Rule 804(b)(3) provides:

Statement against interest—A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless he or she believed it to be true. A statement tending to expose the declarant to criminal

liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

12. In his first statement, the co-defendant said that the appellant shot Ms. Jenkins and he only helped dispose of the gun. In his second statement, the co-defendant said that he fired the first shot at Ms. Jenkins and the appellant fired the second shot.

DAVIS, Chief Justice, dissenting:

(Filed Dec. 16, 1998)

The majority decision in this case is disturbing by the manner with which it has taken serious law enforcement errors and forced a specific conclusion. Because the majority opinion has abandoned long-settled legal principles, it reaches a tragic result in this case that compounds injustice by forever nullifying the prompt presentment rule. Under the majority decision, it is now legally possible for law enforcement officers to make a warrantless arrest and detain a suspect for the express purpose of interrogating him or her about other crimes prior to bringing the suspect to a magistrate for formal arrest and notification of constitutional rights. In view of this Court's prior precedents regarding the prompt presentment rule, I must respectfully dissent from the majority opinion.

### The Defendant Was Legally Under Arrest The Moment She Confessed To Committing Arson

The record in this case is clear. The defendant confessed to committing arson. The confession was made to a police officer who was investigating the arson incident. Under well established principles of law, the moment the defendant confessed to arson probable cause to arrest her was triggered. "We have interpreted Section 6 of Article III [of the West Virginia Constitution] as requiring that a warrantless arrest be based upon probable cause." *State v. Todd Andrew H.,* 196 W.Va. 615, 619 n. 8, 474 S.E.2d 545, 549 n. 8 (1996). In addition, this Court held, in syllabus point 3 of *State v. Duvernoy,* 156 W.Va. 578, 195 S.E.2d 631 (1973), that "[p]robable cause to make an arrest without a warrant exists when the facts and the circumstances within the knowledge of the arresting officers are sufficient to warrant a prudent man in believing that an offense has been committed." Before the police obtained the arson confession from the defendant, she was a suspect in the crime. I do not believe a prudent person would deny, under those circumstances, that probable cause to arrest the defendant for arson existed the moment she confessed to the crime. As this Court stated in *State v. Wickline,* 184 W.Va. 12, 16, 399 S.E.2d 42, 46 (1990) "[w]hen the defen-

dant orally confessed to the crime, the police had probable cause to arrest her." Obviously "[t]here was no chance this defendant would be released without being charged." *State v. Hopkins,* 192 W.Va. 483, 494, 453 S.E.2d 317, 328 (1994) (Cleckley, J. concurring, in part, and dissenting). This Court has further noted, in *State v. Humphrey,* 177 W.Va. 264, 268, 351 S.E.2d 613, 617 (1986), that "ordinarily once an accused confesses to a crime during custodial interrogation, the police will not let [her] leave freely[.]"

The majority opinion holds that once the defendant confessed to arson, she was not under arrest. This is wrong. Our case law long ago abandoned the notion that law enforcement officers must formerly state to a suspect that he or she is under arrest in order for an arrest to actually occur. This Court has recognized "de facto" arrest precisely for situations like the instant case. *See State v.. Mays,* 172 W.Va. 486, 489, 307 S.E.2d 655, 658 (1983) (recognizing de facto arrest). In this regard, we rationally reasoned in *Humphrey,* 177 W.Va. at 268–269, 351 S.E.2d at 617–18, that it was necessary to recognize de facto arrest because "[t]o hold otherwise would allow the police to avoid the prompt presentment requirement by simply delaying the formal arrest. We do not believe the prompt presentment requirement can be skirted so easily." The majority opinion has, in fact, blazed a macabre trail that our prior precedent said must never be followed.

Justice Cleckley observed in *State v. Jones,* 193 W.Va. 378, 382 n. 5, 456 S.E.2d 459, 463 n. 5 (1995), that "a de facto arrest is sufficient to invoke the prompt presentment rule when the defendant is taken into custody and there is probable cause justifying an arrest." Our prior cases support this view. Indeed, in syllabus point 3 of *State v. Wickline,* 184 W.Va. 12, 399 S.E.2d 42 (1990) we held:

Our prompt presentment rule contained in W.Va.Code § 62–1–5, and Rule 5(a) of the West Virginia Rules of Criminal Procedure, is triggered when an accused is placed under arrest. Furthermore, once a defendant is in police custody with sufficient probable cause to warrant an arrest,

the prompt presentment rule is also triggered.

The purpose of our prompt presentment statute, W. Va.Code § 62–1–5, and its counterpart in W.Va.R.Crim.P. 5(a) has previously been explained by this Court:

> By statute, our mandated preliminary appearance before a magistrate serves other vital purposes in addition to informing the defendant of his right against self-incrimination and his right to counsel. The magistrate is required to "in plain terms inform the defendant of the nature of the complaint against him." W.Va.Code § 62–1–6. Moreover, the defendant must be informed "if the offense is to be presented for indictment, of his right to have a preliminary hearing." W.Va.Code § 62–1–6. The defendant at his initial appearance must be provided "reasonable means to communicate with an attorney or with at least one relative or other person for the purpose of obtaining counsel or arranging bail." W.Va.Code § 62–1–6. Finally, it is at this initial appearance that the defendant is entitled to obtain bail.

*State v. Persinger,* 169 W.Va. 121, 134, 286 S.E.2d 261, 269–70 (1982) (footnote omitted). The decision by the majority opinion in this case has abandoned forever the principles embodied in the prompt presentment rule. No citizen is safe from endless hours of interrogation once law enforcement officers have probable cause to arrest them. Thus, a generation of rights have been swept away by this opinion.

In the final analysis, the defendant's murder confession should have been suppressed because it was obtained after the arson confession gave the police probable cause to arrest her and because it was violative of the prompt presentment rule. Moreover, because all of the charges against the defendant were joined for trial purposes, all of the convictions should have been reversed due to the prejudicial impact of the unlawfully obtained murder confession.